"And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Benjamin Sparrow and Samuel Sparrow, afterwards, to wit, on the said first day of November, in the year of our Lord one thousand eight hundred and fifteen, with force and arms, at and in the county of Craven, in the State of North Carolina aforesaid, one other male slave called Jack Battle, of the value of fifty shillings, and the property of one William P. Moore, of the county of Craven, in the State of North Carolina, feloniously and by seduction did take and convey away, with an intention the slave called Jack Battle last aforesaid (531) to sell and dispose of to another person, contrary to an act of the General Assembly entitled `An act to prevent the stealing of slaves, or by violence, seduction, or any other means taking or conveying away any slave or slaves the property of another, and for other purposes therein mentioned,' and against the peace and dignity of the State."
A motion was made to arrest the judgment because the time and place of committing the offense are not set forth in the second count with sufficient precision. The question was referred to this Court.
The indictment charges that the defendants on a certain day and year, at
and in the county of Craven, one male slave named Jack Battle feloniously and by seduction did take and convey away; and the reason in arrest of judgment is that it is not stated with sufficient explicitness that the seduction and taking and conveying away were in the county of Craven; and the precedents of indictments have been cited to show that in every case of larceny the words "then and there being" are set forth after the thing stolen is described. Now, although it is true that precedents are high authority as to what the law is, yet in this case they only prove that they contain these words; for it is *Page 387 
certain that most of them contain many things which never were essential, and some they retain which long since have become useless, as the words "moved and seduced by the instigation of the devil," and "in the peace of God," and in indictments for perjury they conclude, "to the great displeasure of" Almighty God"; again, in homicide, the value of the instrument occasioning the death, which formerly was forfeited as a deodand. It is not, therefore, conclusive that no indictment is good which departs in any particular from the precedents. The truth is that their sufficiency is referable to no precise standard, but must, in every case, depend upon common sense and the plain reason of the thing, as Hawkins expresses it, and which can only be applied to general principles, and the leading ones upon this subject are that nothing material in constituting
the offense shall be taken by inference, or by intendment, as the law writers express it, but must be positively alleged, and (532) that those things which are material shall be alleged with all thecircumstances which they themselves presuppose; as when a stroke constitutes the offense, and is therefore material, it must be positively stated to be given — for instance, "did strike," or to use the phrase usually mentioned, "per cussit," and at what time and place; and when so alleged, it must be stated in what manner or with which hand. So when a wound, occasions the death, and is therefore stated, as it presupposes length, breadth, and depth, they must be stated. But where a bruise is alleged, asthat presupposes neither, it in itself is sufficient as to the manner; and the great difficulty in most of the cases is in ascertaining whether the facts are so alleged.
The design of the law in requiring these niceties is to enable the defendant to make defense, by meeting the charge; that the jury may appear
to be warranted in the conclusion they have drawn, and that the court may see such a definite crime as to apply the punishment which the law has prescribed; and Lord Coke, upon this subject, has said that nimia subtilitas in jure reprobatur; and Lord Chief Justice De Gray has also said, "that the only true rule was, that the court and jury must understand the record as the rest of the world do."
In case of murder the books say that charging the assault with malice, on a particular day and year and place, there is no necessity, in the following clause, which states the strokes, to repeat that it was given with malice, if the words "then and there" be used. Now, in such case, it is clear that the stroke with malice can be more explicitly stated, and it is only made so by being given at the same time and place of the assault; and the reason they assign is that a repetition would produce too much tautology, 4 Co. Rep., 41. But where the jury only find a conclusion, as that the prisoner murdered the deceased, the guilt can only be inferred *Page 388 
(533) by supposing the jury were judges of the law, and knew what constituted murder; but a finding that one man at a certain place, and on a certain day and year, assaulted another, as to the assault, as "explicitly" affirms that the person assaulted was there as the English language is capable of, without encumbering a plain meaning with supernumerary words; for the fact found (and not a conclusion)includes the presence of the party assaulted. When an indictment charges that A. assaulted B. with a sword, and cut off his right arm, surely it does include that B. there had a right arm. The act of taking and conveyingaway, therefore, necessarily includes that the things, when so taken, wasthere. The force of the objection, therefore, when examining this indictment, is, to my mind totally without foundation.
Lord Coke says there are three kinds of certainties in judicial proceedings: certainty to a common intent, certainty to a certain intent in general, and certainty to a certain intent in every particular. The first is required in pleas, the second in indictments, and the third only in cases of estoppel.
The doubt, I think, has been occasioned by a supposed analogy between this and Cotten's case, reported by Croke, and noticed by Hale in his History of Pleas of the Crown. There Cotten was indicted for murder, and the indictment stated that at a certain place and time, Cotten the prisoner, having an axe in his hand, struck one Mary Spencer, whereof she died. In that case the Court held that the stroke was not stated to have been given on any particular day, or at any particular place; and as the stroke constituted the offense, according to the rule already laid down, as every act presupposes time and place, they must be stated. Now, upon an examination of Cotten's case, and divers others where the words adtunc et ibidem were held necessary, it was always in compliance with this rule, and not with a view of locating the object so as to make that
present, when it charged to be acted upon; but for the purpose of confining it when acted to a time and place antecedently stated. And in this very case of Cotton's the Court determined that alleging that on a certain day and place the prisoner having an axe, did necessarily find that the axe was there; for, say, they, it only appears by the indictment that the prisoner had the axe on the day and place mentioned; but it (534) does not appear when or where the stroke was given. Cotten's case, therefore, as far as it is any authority, seems to me in support of the present indictment.
If this indictment had charged that the prisoners, on the day and place mentioned, had seduced, or did seduce, the slave, and that they "did take and convey him away," then, according to Cotten's case, the ad tunc etibidem would have been necessary to connect the latter acts with the *Page 389 
first; for the time and place would then only relate to the first act. The first act, in this indictment, is the taking and conveying away; therefore they do relate to them.
A case which approaches near the present is Heydon's, reported by LordCoke, where the indictment charged that Heydon and others, at a certain day and place, of their malice aforethought and as felons, "in dictum Edwd.Savage ad tunc et ibidem (and not existente) insultum et affrariumfecerunt." Many objections were taken to the indictment, and, amongst others, that the indictment did not state the deceased was in the peace of God. But it did not there occur to the counsel or court as material to allege that when the assault was made upon the deceased he was there — existente — though confessedly to be found in most of the precedents. I cannot, therefore, bring my mind to doubt upon the score of authority; and as to the result to be derived from an application of the rules of common sense and the reason of thing, which Hawkins maintains is the true rule, I think there can be no diversity there. I am, therefore,clearly of opinion that the indictment is sufficient; that it doth allege that the slave in the county of Craven, on a certain day, was by seduction taken and conveyed away, and that the prisoners are also alleged to be the perpetrators thereof, and, therefore, there should be judgment for the State.
TAYLOR, C. J., HALL, J., and RUFFIN, J., concurred.
DANIEL, J., dissented.
NOTE. — See act of 1811 (1 Rev. Stat., ch. 35, sec. 12) and S. v.Cherry, 7 N.C.; 82.
Cited: S. v. Williams, 31 N.C. 152.
(535)